PEOPLE, PLAINTIFF AND APPELLEE, *v.* MASSARI, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Guayama in a Prosecution for Adulteration of Milk.

No. 2070.—Decided June 8, 1923.

PUBLIC HEALTH—ADULTERATED MILK—CHEMICAL EXPERT. — A government employee who under a civil service examination has for several years held the office of assistant chemist of the Insular Laboratory, devoting himself to analyses generally and to the analysis of samples of milk particularly, is qualified to testify as an expert in a prosecution for the sale of adulterated milk.

ID.—ID.—DEPARTMENTAL REGULATIONS—JUDICIAL NOTICE.—Courts are bound to take judicial notice of the regulations of the Department of Health which prescribe rules for determining what is adulterated milk.

The facts are stated in the opinion.

*Mr. C. Domínguez Rubio* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is a prosecution for violation of the Act against the adulteration of milk of March 10, 1910.

The defendant was convicted and sentenced to ten days in jail and the costs. From that judgment this appeal was taken and the appellant assigns the following errors: 1.—The admission by the trial court of the expert testimony of

Rafael Barreras whose qualification as such was attacked by the defendant. 2. The erroneous weighing of the evidence.

Witness Barreras was called by the government in his capacity as assistant chemist of the Chemical Laboratory of the Department of . Health. He testified that he had been in the civil service for eight years and had passed an examination before the Board of Pharmacy, though he received no certificate or diploma, and that as assistant chemist of the Insular Laboratory he devoted himself to analyses generally and therefore to the analysis of milk. On these facts the court found that the witness was qualified to testify as an expert in connection with the analysis of the milk seized in this case, and we find no error in the admission of his testimony as to the comparison between the milk seized and the standard prescribed by the regulations of the Department of Health.

It is true that a certificate or diploma from a university carries with it the presumption of capacity, but the lack of it does not always imply incapacity, for when the person is a government employee appointed to office after an examination and has had several years experience in his work it is for the court to determine the admissibility of his expert testimony under such circumstances. Besides, there is no showing that the law requires a university certificate for holding the office.

In this case the expert testified that he examined the sample of milk and the analysis showed 26 per cent of water artificially added, which prompted the conclusion that the milk was adulterated. To show the adulteration the expert referred to the legal standard prescribed by the regulations of the Department of Health, but the appellant maintains, as one of his principal arguments on the insufficiency of the evidence, that the said regulations were not offered in evidence, which amounts to saying that courts

can not take judicial notice of such regulations. This question was raised in the case of *People* v. *Rivera et al.*, 31 P. R. R. 612, in which the court said:

"It is clear, therefore, that the standard of milk for the purposes of distinguishing between pure milk and adulterated milk has been determined in accordance with the requirements of the statute and that the regulation must be considered to have the force and effect of law in the form in which it was adopted by the Department of Health. However, the question raised by the appellant and on which is based all of the argument contained in his brief is that notwithstanding the force of law of such regulation, the courts can not take judicial notice of them, alleging that the trial court erred in convicting the defendant in view of the failure of the Government to produce evidence of the existence of such regulations. But it seems that it was the intention of our Legislature not only to punish with severity all persons guilty of selling or having for sale adulterated milk, but also to avoid impunity through mere technicalities, and, in view of the salutary purposes of the law, it provided in a positive manner that courts of justice should take judicial notice of the said rules and regulations in section 15 of the Act, as follows:

"'That all courts are required to take judicial notice of the adoption of such rules and regulation and of the publication thereof required by this Act.'

"In the face of such a provision it is unnecessary to discuss the cases cited by the appellant in his brief, inasmuch as the first refers to decisions of the Food Commission and the second to regulations promulgated by the Chief of the Bureau of Weights and Measures, and considering the special enactment as to the rules and regulations of the Department of Health, those cases are not applicable to the present case."

The two cases to which we then referred are the same cases cited by this appellant, that is, *People* v. *Garau & Co.*, 29 P. R. R. 970, and *People* v. *Cuadrado*, 27 P. R. R. 767.

The appellant further alleges that as the milk was not found in a stall where it could be offered for sale, it was necessary to prove the sale, and that as the container

was not sealed, the defendant can not be held responsible for its contents. It was not contradicted, but rather admitted, that the defendant sent milk to Patillas to be sold there by a boy who testified at the trial. The Act does not refer solely to the sale of milk as a consummated fact, but it is sufficient to offer or keep it for sale, and since the defendant did not maintain a milkstand, the means that he employed amounted to that and for that reason he was bound to take all precautions and was subject to all of the responsibilities that the law and the health regulations impose. It is true that there was no evidence tending to show that the defendant was caught adulterating the milk, but the law does not require that the person selling or offering it for sale should have knowledge of the adulteration in order that the crime be complete. *People* v. *Rodríguez,* 23 P. R. R. 780; ·*People* v. *Gautier,* 20 P. R. R. 311.

For the foregoing reasons the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.